**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

TAYLOR MAE FAGAN,

               Plaintiff,

v.                                       Case No. 3:18-cv-1418-J-JRK

ANDREW M. SAUL,[1]
Commissioner of Social Security,

               Defendant.

_____

## OPINION AND ORDER[2]

### I. Status

       Taylor Mae Fagan ("Plaintiff") is appealing the Commissioner of the Social Security

Administration's ("SSA('s)") final decision denying her claim for child's disability insurance

benefits ("CDIB"). Plaintiff's alleged inability to work is the result of "ASD" (autism spectrum

disorder). Transcript of Administrative Proceedings (Doc. No. 14; "Tr." or "administrative

transcript"), filed February 8, 2019, at 128, 140, 292 (emphasis omitted).[3] Plaintiff filed an

application for CDIB on May 5, 2015, alleging an onset disability date of April 1, 2014. Tr.

---

[1]     Andrew M. Saul became the Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Andrew M. Saul should be substituted for Nancy A. Berryhill as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 13), filed February 8, 2019; Reference Order (Doc. No. 16), entered February 11, 2019.

[3]     Upon review of the administrative transcript, the undersigned believes "ASD" stands for "autism spectrum disorder."

at 262. The application was denied initially, Tr. at 128-38, 139, 153, 154-56, and upon reconsideration, Tr. at 140-51, 152, 158, 159-63.

On November 29, 2017, an Administrative Law Judge ("ALJ") held a hearing during which he heard testimony from Plaintiff, who was represented by counsel, Plaintiff's mother, and a vocational expert ("VE"). <u>See</u> Tr. at 41-127. At the time of the hearing, Plaintiff was twenty years old. <u>See</u> Tr. at 47. The ALJ issued a Decision on December 27, 2017, finding Plaintiff not disabled through the date of the Decision. Tr. at 10-27.

Thereafter, Plaintiff requested review of the Decision by the Appeals Council. Tr. at 258. The Appeals Council accepted additional evidence in the form of a brief authored by Plaintiff's counsel. Tr. at 4-5; <u>see</u> Tr. at 395-400 (brief). On October 4, 2018, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On November 30, 2018, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1) seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff makes two arguments: 1) "[t]he Commissioner failed to articulate good cause for rejecting the treating opinions of Dr. [Sabrina] Cac[e]res, even though the opinion[s are] consistent with the extensive medical history and documentation and with her diagnoses of Asperger Syndrome and other conditions" and 2) "[t]he Commissioner erred in rejecting the opinions of multiple examining and nonexamining medical sources regarding the extent of [Plaintiff's] psychiatric limitations and ability to perform full-time sustained work activity." Plaintiff's Brief (Doc. No. 21; "Pl.'s Br."), filed May 13, 2019, at 1. In making her second argument, Plaintiff specifically points to the opinions

of the non-examining state agency consultants (Dr. Bevlyn Sagon and Dr. Theodore Weber),[4] Dr. Sherry Risch, Dr. Darrin Kirkendall, Dr. Susan Young, Terri Evans, and Dr. Philip Yates.[5] See Pl.'s Br. at 20-25. On July 11, 2019, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 22; "Def.'s Mem.") addressing Plaintiff's arguments. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for further proceedings.

The undersigned addresses the ALJ's assessment of the respective opinions of Dr. Caceres, Dr. Kirkendall, and Dr. Risch. On remand, a proper evaluation of these physicians' opinions may impact the ALJ's assessment of the other medical opinions. For this reason, the Court need not address Plaintiff's arguments regarding the remaining opinions. See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (declining to address certain issues because they were likely to be reconsidered on remand); Demenech v. Sec'y of the Dep't of Health & Human Servs., 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding that certain arguments need not be addressed when the case would be remanded on other issues).

---

[4]     Dr. Sagon reviewed Plaintiff's claim at the initial level, see Tr. at 134-38, and Dr. Weber reviewed Plaintiff's claim at the reconsideration level, see Tr. at 147-51. Plaintiff does not refer to the state agency consultants by name, but she cites their opinions. See Pl.'s Mem. at 20.

[5]     Dr. Risch, Dr. Kirkendall, Dr. Young, Ms. Evans, and Dr. Yates are psychologists, and they each conducted a psychological evaluation of Plaintiff. See Tr. at 1105-11 (Dr. Risch's evaluation note from October 5, 2017); Tr. at 511-17 (Dr. Kirkendall's evaluation note dated August 6, 2015); Tr. at 557-59 (Dr. Young's evaluation note dated July 13, 2012); Tr. at 738-48 (Ms. Evans's evaluation note dated November 30, 2012); Tr. at 423-35 (Dr. Yates's evaluation note dated December 13, 2013).

## II. The ALJ's Decision

When determining whether an individual is disabled,[6] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 12-27. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since April 1, 2014, the alleged onset date." Tr. at 12 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: attention deficit hyperactivity disorder (ADHD), asthma, autism spectrum disorder, disorder of the written language, developmental coordination disorder, major depression, and generalized anxiety disorder." Tr. at 12 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that

---

[6]    "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

meet or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 13 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform light work as defined in 20 [C.F.R. §] 404.1567(b) with the ability to lift and carry 20 pounds occasionally and 10 pounds frequently; sit for up to 6 hours, stand for up to 6 hours, and walk for up to 6 hours; push/pull as much as lift and carry; occasional use of foot controls; no more than occasional overhead reaching with the right dominant upper extremity; occasionally climb ramps and stairs, but never climb ladders or scaffolds; never work around unprotected heights and moving mechanical parts; never work in environments with temperature extremes; limited to simple tasks and simple work-related decisions; no more than occasional interaction with supervisors and coworkers; no interaction with the general public; and off task up to 8% of the 8-hour workday.

Tr. at 17 (emphasis omitted).

At step four, the ALJ found that Plaintiff "has no past relevant work." Tr. at 25 (emphasis and citation omitted). At step five, after considering Plaintiff's age ("16 years of age on the alleged disability onset date"), education ("at least a high school education"), lack of work experience, and RFC, the ALJ relied on the testimony of the VE and found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," such as "Assembler," "Labeler," and "Warehouse Checker." Tr. at 25-26 (emphasis and citation omitted). The ALJ concluded that Plaintiff "has not been under a disability . . . from April 1, 2014, through the date of th[e D]ecision." Tr. at 27 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### IV. Discussion

As noted, the undersigned addresses the ALJ's evaluation of Dr. Caceres's, Dr. Kirkendall's, and Dr. Risch's respective opinions. One of the reasons given by the ALJ for the weight assigned to the opinions of Dr. Caceres and Dr. Kirkendall implicates the ALJ's assessment of Plaintiff's subjective complaints. As such, the undersigned also addresses

the ALJ's finding regarding Plaintiff's subjective complaints. As an initial matter, the undersigned summarizes the parties' arguments and sets out the applicable law. Then, the medical opinions are addressed in turn.

## A. Parties' Arguments

Plaintiff contends that "[t]he ALJ failed to give adequate rationale for rejecting the opinions of the treating and examining medical sources." Pl.'s Br. at 25. Plaintiff argues the medical records "do not support the ALJ's factual understanding of the records in this case." Id. at 14. According to Plaintiff, "the ALJ improperly minimized [Plaintiff's] mental impairments and failed to realize the severity of [Plaintiff's] developmental impairments of Asperger's Disorder (Autism Spectrum Disorder), [ADHD], specific learning disorder with intelligent and written expression, developmental coordination disorder, as well as major depressive disorder and anxiety." Id. at 11.

Responding, Defendant asserts that "Plaintiff relies heavily on the extreme opinions from her treating physician, Dr. Caceres, yet the ALJ explained that Dr. Caceres'[s] opinions were at odds with her treatment records, which showed mostly normal mental status examination findings and improvement with medication and cognitive behavioral therapy." Def.'s Mem. at 4. As to the remaining psychologists, Defendant contends that "none of the[ir] evaluations changes the fact that the ALJ's assessment of the opinions was supported by substantial evidence." Id. at 14.

**B. Applicable Law**

The Regulations[7] establish a hierarchy among medical opinions[8] that provides a framework for determining the weight afforded each medical opinion. See 20 C.F.R. §§ 404.1527, 416.927. Essentially, "the opinions of a treating physician are entitled to more weight than those of a consulting or evaluating health professional," and "[m]ore weight is given to the medical opinion of a source who examined the claimant than one who has not." Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1259, 1260 n.5 (11th Cir. 2019). Further, "[n]on-examining physicians' opinions are entitled to little weight when they contradict opinions of examining physicians and do not alone constitute substantial evidence." Id. at 1260 (citing Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5); see also 20 C.F.R. §§ 404.1527(f),

---

[7]     On January 18, 2017, the SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (January 18, 2017). Because Plaintiff filed her claim before that date, the undersigned cites the rules and Regulations that were in effect on the date the claim was filed, unless otherwise noted.

[8]     "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1); see also 20 C.F.R. § 404.1502 (defining "[a]cceptable medical sources"); 20 C.F.R. § 404.1513(a).

416.927(f); see also McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citation omitted) (stating that "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists").

With regard to a treating physician or psychologist,[9] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c)(2). Because treating physicians and psychologists "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychologist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's or psychologist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

---

[9] A treating physician or psychologist is a physician or psychologist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

If an ALJ concludes the medical opinion of a treating physician or psychologist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Schink, 935 F.3d at 1245; Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1305 (11th Cir. 2018) (citation omitted); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychologist's own medical records. Schink, 935 F.3d at 1259; Hargress, 883 F.3d at 1305 (citation omitted); Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(c), 416.927(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981) (citation omitted); see also 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz, 825 F.2d at 279); Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.2d at 1223.

"When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)). To reject a claimant's assertions of subjective symptoms, "explicit and adequate reasons" must be articulated by the ALJ. Wilson, 284 F.3d at 1225; see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).

In 2017, the SSA issued new guidance to ALJs about how to evaluate subjective complaints of pain and other symptoms. The SSA has "eliminat[ed] the use of the term 'credibility' from [its] sub-regulatory policy, as [the R]egulations do not use this term." Social

Security Ruling ("SSR") 16-3P, 2017 WL 5180304, at *2 (Oct. 25, 2017).[10] "In doing so, [the SSA has] clarif[ied] that subjective symptom evaluation is not an examination of an individual's character." Id. Accordingly, ALJs are "instruct[ed] . . . to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." Id. "The change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character; obviously [ALJs] will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." Cole v. Colvin, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

## C. Dr. Caceres's Opinions

### 1. Medical Opinions

Dr. Caceres has treated Plaintiff since 2014 for major depressive disorder, generalized anxiety disorder, and ADHD. See, e.g., Tr. at 538, 901.[11] The administrative transcript does not contain any treatment notes by Dr. Caceres from 2014, but it contains six treatment notes from 2015, eight from 2016, and three from 2017. See Tr. at 526-28,

---

[10]    There was a prior version of SSR 16-3P in place at the time of the ALJ's Decision. See SSR 16-3P, 2016 WL 1119029 (Mar. 16, 2016). The same relevant language quoted in this Opinion and Order appears in this prior version. See id. at *1.

[11]    Dr. Caceres uses the terms "MDD" and "GAD" in her treatment notes. See, e.g., Tr. at 901. "MDD" likely stands for "major depressive disorder," and "GAD" likely stands for "generalized anxiety disorder."

529-31, 532-34, 535-37, 908-09, 910-11 (2015 treatment notes); Tr. at 879-81, 882-84, 894-96, 897-99, 900-01, 902-03, 904-05, 906-07 (2016 treatment notes); Tr. at 885-87, 888-90, 891-93 (2017 treatment notes). The treatment notes reflect that Plaintiff has been seeing Dr. Caceres every month or every two months.

Dr. Caceres provided multiple opinions regarding the effects of Plaintiff's mental impairments on Plaintiff's ability to perform work-related functions. Each opinion is summarized below.

### a. September 30, 2015 Letter

In a letter dated September 30, 2015, Dr. Caceres opined that Plaintiff has a "hard time picking up on social cues and understanding what is socially appropriate," and that "a work environment could cause emotional distress." Tr. at 538.

### b. Undated Letters

The administrative transcript also contains two undated letters from Dr. Caceres. See Tr. at 666, 667. In these letters, Dr. Caceres stated that Plaintiff may "benefit from school accommodations." Tr. at 667; see also Tr. at 666. In one of the letters, Dr. Caceres opined that Plaintiff "has a hard time functioning in a busy classroom, particularly in the afternoons," and she suggested that Plaintiff "hav[e] a safe place to go when overwhelmed by the environment and hav[e] shorter days." Tr. at 666. In the other letter, Dr. Caceres recommended that Plaintiff's written assignments be reduced in "volume, complexity and length" and that Plaintiff be allowed to "give responses in an oral format." Tr. at 667.

### c. October 30, 2015 Opinions

On October 30, 2015, Dr. Caceres completed a "Psychiatric Review Technique,"

see Tr. at 542-53, in which she opined, among other things, that Plaintiff has marked limitations in maintaining social functioning, see Tr. at 552. On the same date, Dr. Caceres completed a Mental Residual Function Capacity Assessment, in which she opined in relevant part that Plaintiff has the following marked and severe limitations. See Tr. at 554-55. Plaintiff has marked limitations in her ability to: "carry out detailed instructions"; "maintain attention and concentration for extended periods"; "work in coordination with or proximity to others without being distracted by them"; "make simple work-related decisions"; "complete a normal workday and workweek without interruptions from psychologically[-]based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods"; "interact appropriately with the general public"; "respond appropriately to changes in the work setting"; and "travel in unfamiliar places or use public transportation." Tr. at 554-55. Plaintiff is severely limited in her ability to "accept instructions and respond appropriately to criticism from supervisors," "get along with coworkers or peers without distracting them or exhibiting behavioral extremes," and "set realistic goals or make plans independently of others." Tr. at 555.

### d. August 21, 2017 Opinions

On August 21, 2017, Dr. Caceres completed another Psychiatric Review Technique. See Tr. at 965-78. Dr. Caceres opined Plaintiff is markedly limited in interacting with others and in understanding, remembering, or applying information. Tr. at 977. According to Dr. Caceres, Plaintiff is extremely limited in her ability to adapt or manage herself and in her ability to concentrate, persist, or maintain pace. Tr. at 977.

On the same date, Dr. Caceres completed another Mental Residual Function

Capacity Assessment, in which she opined in relevant part that Plaintiff has the following marked and severe limitations. <u>See</u> Tr. at 983-84. Plaintiff is markedly limited in her ability to: "maintain attention and concentration for extended periods"; "work in coordination with or proximity to others without being distracted by them"; "make simple work-related decisions"; "interact appropriately with the public"; "maintain socially appropriate behavior"; "adhere to basic standards of neatness and cleanliness"; and "set realistic goals or make plans independently of others." Tr. at 983-84. Plaintiff is severely limited in her ability to: "complete a normal workday and workweek without interruptions from psychologically[-]based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods"; "respond appropriately to changes in the work setting"; and "travel in unfamiliar places or use public transportation." Tr. at 984.

### 2. ALJ's Assessment

The ALJ gave Dr. Caceres's September 30, 2015 opinion "some weight." Tr. at 20. The ALJ stated that "the record as a whole does not indicate an inability to participate within a work environment with certain restrictions, such as restrictions on social interaction." Tr. at 20. The ALJ did not refer to or weigh the opinions contained in Dr. Caceres's undated letters.

As to Dr. Caceres's opinions from October 30, 2015 and August 21, 2017, the ALJ gave them "[l]imited weight." Tr. at 23. The ALJ stated as follows:

> [T]here is a concern that the doctor relied too heavily on [Plaintiff's] subjective report of her symptoms and limitations, uncritically accepting as true most, if not all, of what [Plaintiff] reported. However, progress notes from

Psychological Services of St. Augustine[12] do not contain the type of significant clinical abnormalities one would expect if [Plaintiff] were in fact disabled or as limited as alleged by the doctor. Progress notes state that [Plaintiff] continues to improve. She experiences exacerbations in symptoms with stress/change in routine (father's surgery and a friend moving to Tampa, for example); however, mental status examinations have been relatively unremarkable. What is more, the doctor's medical opinions are inconsistent with the ability to perform well in a college setting. [Plaintiff] may procrastinate completing assignments; however, her grades are impressive.

Tr. at 23 (citations omitted).

### 3. Analysis

As the treatment notes reflect, Dr. Caceres's treatment of Plaintiff has been significant. Dr. Caceres's "familiarity with [Plaintiff] was sufficient to entitle [her] opinions to the presumption of substantial or considerable weight that is ordinarily due to treating physicians' opinions." Schink, 935 F.3d at 1260. The ALJ failed to show good cause for giving Dr. Caceres's opinions less than substantial or considerable weight.

The ALJ's assessment of Dr. Caceres's September 30, 2015 opinions frustrates judicial review because the ALJ did not provide any citations or explanation for his finding that "the record as a whole" does not support "restrictions on social interaction." Tr. at 20. Further, the ALJ's rejection of the opinions regarding social restrictions is confusing because the ALJ included social limitations in the RFC. See Tr. at 17 (restricting Plaintiff to "no more than occasional interaction with supervisors and coworkers" and "no interaction with the general public" (emphasis omitted)).

It is unclear whether the ALJ considered the opinions contained in Dr. Caceres's

---

[12] Dr. Caceres works at Psychological Services of St. Augustine. See Tr. at 538.

undated letters because he did not refer to them in the Decision. On remand, the ALJ shall evaluate these opinions and specify the weight assigned to them.

The ALJ's assessment of Dr. Caceres's October 30, 2015 and August 21, 2017 opinions suffers from a number of deficiencies addressed below.

First, although an ALJ can discount a physician's opinion on the ground that it is based primarily on the claimant's subjective complaints; here, judicial review of the ALJ's assessment of Plaintiff's subjective complaints is frustrated. Freeman v. Barnhart, 220 F. App'x 957, 960 (11th Cir. 2007); see also Freel v. Astrue, No. 3:10-cv-01164-MCR, 2012 WL 628463, at *5 (M.D. Fla. Feb. 27, 2012). After summarizing Plaintiff's and Plaintiff's mother's testimony, the ALJ found that Plaintiff's subjective complaints are "not entirely consistent" with the evidence of record. Tr. at 19. The ALJ then discussed some of the medical evidence, but he did not articulate specifically any inconsistencies between Plaintiff's subjective reports and the other evidence of record, leaving only the boilerplate finding regarding Plaintiff's subjective symptoms. "In the absence of a cogent discussion of the [ALJ's assessment of Plaintiff's subjective complaints], the statement is too general to permit meaningful judicial review." McKinney v. Astrue, No. 8:08-cv-2318-T-TGW, 2010 WL 149826, at *3 (M.D. Fla. Jan. 15, 2010) (unpublished) (citing Marbury, 957 F.2d at 840 n.2; Walker v. Bowen, 826 F.2d 996, 1004 (11th Cir. 1987); Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985)).

Second, although some treatment notes state that Plaintiff is improving, her improvement tended to occur whenever she was not in school. See Tr. at 888 (June 6, 2017 treatment note indicating that Plaintiff "has been feeling better since school ended"

and that during "[f]inals week . . . [s]he was picking much more[13]] and felt anxiety was uncontrollable"); Tr. at 895 (September 7, 2016 treatment note indicating Plaintiff was "tolerating" her ADHD medication and it was "helping focus" but that "now that school has started she is feeling overwhelmed and unable to organize herself"); Tr. at 886 (March 22, 2017 treatment note indicating Plaintiff's generalized anxiety disorder "improved now that school is out, but the thought of returning heightens anxiety"). Indeed, a number of treatment notes indicate that "[m]ost [of Plaintiff's] issues are linked to feeling overwhelmed by school work." Tr. at 880, 883, 895. Further, in Dr. Caceres's most recent treatment note, she clarified that although Plaintiff's "function has improved overall, she would not be able to maintain a routine for the amount of time and days she would need for a job." Tr. at 892.

Third, it is unclear, and the ALJ did not explain, how the fact that Plaintiff "experiences exacerbations in symptoms with stress/change in routine," Tr. at 23, is inconsistent with some of Dr. Caceres's opinions, particularly the opinion that Plaintiff has marked to severe limitations in "respond[ing] appropriately to changes in the work setting." Tr. at 555, 984.

Fourth, the ALJ states that mental examinations have been "relatively unremarkable," Tr. at 23, but he did not identify any unremarkable findings or explain how they are inconsistent with or do not support Dr. Caceres's opinions. Indeed, some of the mental examination findings tend to support Dr. Caceres's opinions. For example, Plaintiff's problem-solving skills were consistently noted to be poor, see Tr. at 527, 529,

---

[13]     As a result of her impairments, Plaintiff "picks" at her scabs and hangnails. See, e.g., Tr. at 52, 55, 900, 903.

532, 536, 894, 898, 900, 902, 904, 906, 908, 910, which appears to support the opinion that Plaintiff has marked to severe limitations in "mak[ing] simple work-related decisions." Tr. at 555, 984. It would be improper for the Court to draw its own conclusions and decipher whatever inconsistencies the ALJ may have perceived. See Rosario v. Comm'r of Soc. Sec., 877 F. Supp. 2d 1254, 1266 (M.D. Fla. 2012) (recognizing that "conclusory statements by an ALJ to the effect that an opinion is inconsistent with or not bolstered by the medical record are insufficient to show an ALJ's decision is supported by substantial evidence unless the ALJ articulates factual support for such a conclusion" and that "it would be improper for the [c]ourt to draw its own conclusions from the ALJ's summary of the medical evidence"). Without the ALJ clearly articulating an explanation for partly discounting Dr. Caceres's opinions, judicial review is frustrated because the Court cannot determine whether substantial evidence supports the ALJ's conclusion that "progress notes from Psychological Services of St. Augustine do not contain the type of significant clinical abnormalities one would expect if [Plaintiff] were in fact disabled or as limited as alleged by the doctor." Tr. at 23. Although there is no rigid requirement that the ALJ specifically refer to every piece of evidence, the ALJ's failure to meaningfully address Plaintiff's treatment notes constitutes such a broad rejection that judicial review is frustrated. See Dyer, 395 F.3d at 1211.

Fifth, the ALJ's sole remaining reason—Plaintiff's "ability to perform well" in college—is insufficient for this Court to find that substantial evidence supports the ALJ's assessment of Dr. Caceres's opinions. Plaintiff was taking only two or three classes per semester, Tr. at 49, 1107, and she consistently reported she found college "overwhelming"

and "draining," see Tr. at 891 (August 21, 2017 treatment note indicating Plaintiff "decided to stick to 2 classes this semester as that is already draining"); Tr. at 894 (September 7, 2016 treatment note indicating Plaintiff reported that "[s]chool can be overwhelming. Particularly when there are several steps to the task"); Tr. at 904 (March 9, 2016 treatment note indicating Plaintiff reported she "is doing well academically, however[,] she continues to feel very overwhelmed physically going to the class"); Tr. at 843 (January 28, 2016 treatment note indicating Plaintiff has "school stress and an assignment which has overwhelmed her"); Tr. at 529 (August 28, 2015 treatment note indicating Plaintiff "started school, but has not completed her work because she feels it is overwhelming"). Further, Plaintiff's mother had to help her by "read[ing] chapters to her and organ[izing] information for tests," Tr. at 879, and she had to "keep [Plaintiff] on task and remind[ ] her when things are due," Tr. at 894.

Sixth and lastly, although the ALJ gave "[l]imited weight" to Dr. Caceres's October 30, 2015 and August 21, 2017 opinions, he did not clarify what parts of the opinions he accepted and rejected. Tr. at 23. On remand, if the ALJ decides to give limited weight to Dr. Caceres's opinions, he should identify the opinions he is accepting and the ones he is rejecting.

### D. Dr. Kirkendall's Opinions

#### 1. Medical Opinions

Dr. Kirkendall conducted a psychological evaluation of Plaintiff on August 6, 2015. See Tr. at 511-17. He opined in relevant part that Plaintiff is markedly limited in her ability to "adequately maintain appropriate social behavior," "respond appropriately to changes

in the environment," and "interact adequately with peers and interact adequately with adults." Tr. at 516.

### 2. ALJ's Assessment

The ALJ assigned Dr. Kirkendall's opinions "some weight, as the doctor had an opportunity to interview [Plaintiff] and perform a mental status examination before forming his opinion." Tr. at 22. The ALJ continued as follows:

> In his report, the doctor stated that [Plaintiff] was cooperative throughout the evaluation; however, her social skills were significantly below age expectation. On mental status examination, eye contact was appropriate. Expressive and receptive language skills were age appropriate. [Plaintiff's] affect was of full range and appropriate in speech and thought content. Mood was euthymic. Attention and concentration were intact and age appropriate. Recent and remote memory skills were mildly impaired due to anxiety and nervousness in the evaluation.

> However, there is a concern that Dr. Kirkendall relied too heavily on [Plaintiff's] subjective report of her symptoms and limitations, uncritically accepting as true most, if not all, of what [Plaintiff] reported. The overall evidence does not support a marked limitation in the ability to respond appropriately to changes in the environment. As noted above, [Plaintiff] has been able to participate and navigate through a wide array of social activities, such as volunteering at a day care, volunteering at a nursing home, participating in color guard and horseback riding, attending family vacations, and attending college classes, for example[ ]. The record indicates that [Plaintiff] has benefited from [cognitive behavioral therapy ("CBT")] techniques of thought stopping and deep breathing, which have been helpful.

Tr. at 22 (citations omitted).

### 3. Analysis

As to the ALJ's "concern that Dr. Kirkendall relied too heavily on [Plaintiff's] subjective report of her symptoms and limitations," Tr. at 22, judicial review of the ALJ's assessment of Plaintiff's subjective complaints is frustrated, as noted above.

To the extent the ALJ found that Plaintiff's cooperativeness, good eye contact, language skills, and appropriate speech are inconsistent with Dr. Kirkendall's opinions, he did not explain the inconsistency, nor is the inconsistency obvious. Schink, 935 F.3d at 1263 (stating that "[i]t is not enough merely to point to positive or neutral observations that create, at most, a trivial and indirect tension with the treating physician's opinion by proving no more than that the claimant's impairments are not all-encompassing" (citation omitted)).

The ALJ also failed to explain—and it is unclear to the undersigned—how Plaintiff's activities (volunteer work, horseback riding, color guard, going on family vacations, and attending college) are inconsistent with Dr. Kirkendall's opinions regarding Plaintiff's marked limitation in appropriately responding to change. See Tr. at 22. Notably, Plaintiff volunteered from 2007-2012, Tr. at 424; this was years prior to the alleged onset disability date of April 1, 2014. Although Plaintiff participated in her high school color guard team, she reported "difficulty learning and performing [the] coordinated tasks involved . . . ." Tr. at 597, 725 (duplicate); see also Tr. at 498 (November 20, 2014 treatment note indicating Plaintiff reported that "[d]uring color guard activities she has difficulty timing her movements with the count given and times then using the music being played instead"). Although Plaintiff goes on family vacations, she spends a significant amount of the time sleeping because she is "exhausted" from the stimuli around her. Tr. at 118, 891; see also Tr. at 62. Lastly, Plaintiff's experience in college, as summarized above, does not constitute substantial evidence to discount Dr. Kirkendall's opinions.

The undersigned notes that although the ALJ rejected Dr. Kirkendall's opinion that Plaintiff has marked limitations in responding to change, Tr. at 22, he gave great weight to

the opinions of two state agency consultants, Tr. at 20, 21, who opined in part that Plaintiff has "marked limitations when there are changes in her routine," Tr. at 136, 148.[14] This opinion is very similar to, if not the same as, Dr. Kirkendall's opinion that Plaintiff has marked limitations in responding to changes in the environment. See, cf., Schink, 935 F.3d at 1261 (finding that "the ALJ's conclusion that he found the terms [two treating physicians'] opinions employed to be vague is contradicted by the fact that the state consultative doctor who opined about [the plaintiff's] condition . . . used the same terms, and the ALJ had no problem relying on [the state consultative doctor's] opinion").

As to the ALJ's reliance on Plaintiff's use of CBT techniques, treatment notes indicate only that Plaintiff has been "successful" using CBT techniques, Tr. at 859, 865, but the impact of this treatment on Plaintiff's impairments is unclear.

Lastly, ALJ did not clarify what parts of Dr. Kirkendall's opinions he accepted and rejected. On remand, if the ALJ decides to give some weight to Dr. Kirkendall's opinions, he should identify the opinions he is accepting and the ones he is rejecting.

## E. Dr. Risch's Opinions

### 1. Medical Opinions

Dr. Risch conducted a psychological evaluation of Plaintiff on October 5, 2017. See Tr. at 1105-11. Dr. Risch opined that Plaintiff's "immaturity and dependent personality style will limit her ability to appropriately interact with coworkers and supervisors" and that she "would not be able to tolerate criticism or negative feedback." Tr. at 1110. According to Dr.

---

[14] The state agency consultants also opined that Plaintiff's "ability to respond appropriately to changes in the work setting" is moderately limited. Tr. at 136, 149.

Risch, Plaintiff "would only be able to participate in employment in a very low stress setting that has minimal social skill requirements." Tr. at 1110. Dr. Risch opined that Plaintiff's "processing deficits and coordination problems will also limit her employment choices." Tr. at 1110.

On October 11, 2017, Dr. Risch completed a Mental Residual Functional Capacity Assessment, in which she opined in relevant part that Plaintiff has the following marked and severe limitations. <u>See</u> Tr. at 1113-14. Plaintiff is markedly limited in her ability to "understand and remember very detailed instructions"; "carry out detailed instructions"; "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances"; "work in coordination with or proximity to others without being distracted by them"; "interact appropriately with the general public"; "get along with coworkers or peers without distracting them or exhibiting behavioral extremes"; "respond appropriately to changes in the work setting"; and "set realistic goals or make plans independently of others." Tr. at 1113-14. Plaintiff is severely limited in her ability to: "maintain attention and concentration for extended periods"; "complete a normal workday and workweek without interruptions from psychologically[-]based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods"; "accept instructions and respond appropriately to criticism from supervisors"; and "travel in unfamiliar places or use public transportation." Tr. at 1113-14.

### 2. ALJ's Assessment

The ALJ gave Dr. Risch's opinions "great weight to the extent [they are] consistent with the assessed [RFC]." Tr. at 24. The ALJ, however, gave Dr. Risch's opinions "little

weight" "to the extent that the opinion[s] contain[ ] greater or additional restrictions than the assessed [RFC], . . . as those restrictions are not consistent with the medical evidence of record or supported by the record as a whole." Tr. at 24. The ALJ continued as follows:

> The record indicates that [Plaintiff] has mental symptomology; however, she has been able to volunteer at a daycare and nursing home. [Plaintiff] has been able to attend college on a part-time basis, taking up to three classes per semester. [Plaintiff] has performed well in college academically. [Plaintiff] is able to participate in extracurricular activities, such as riding horses for therapy. Overall, the medical record indicates that [Plaintiff] has benefited from individual therapy. The undersigned notes that background noises were present during the hearing (air conditioning, clock, and background conversation); however, [Plaintiff] was able to provide detailed answers on the questions asked. She was able to maintain concentration, persistence, and a pleasant demeanor despite the presence of background noise (distracting stimuli).

Tr. at 24.

### 3. Analysis

The ALJ's reliance on Plaintiff's volunteer work and college performance is erroneous for the reasons already stated. See supra pp. 22. The ALJ provided no citation or explanation for his finding that "the medical record indicates that [Plaintiff] has benefited from individual therapy." Tr. at 24. The ALJ's remaining reason, that on one occasion (at the hearing), Plaintiff was able to "maintain concentration, persistence, and a pleasant demeanor" even though there was some background noise (air conditioning, clock, and background conversation), Tr. at 24, does not amount to substantial evidence.

Further, the ALJ's statement that he gave great weight to Dr. Risch's opinions to the extent they are consistent with the RFC, and little weight to her opinions to the extent they are not, leaves unclear which portions of Dr. Risch's opinions the ALJ gave great

weight and which portions the ALJ gave little weight. See Wood v. Comm'r of Soc. Sec., No. 6:12-cv-1883-Orl-22, 2014 WL 117088, at *7 (M.D. Fla. Jan. 13, 2014). On remand, if the ALJ decides to partly discount Dr. Risch's opinions, he should identify the opinions he is accepting and the ones he is rejecting.

## V. Conclusion

Based on the foregoing, it is

**ORDERED**:

1.      The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g)**, REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

> (A)      Reevaluate the opinions of Dr. Sabrina Caceres, Dr. Darrin Kirkendall, and Dr. Sherry Risch; specify the weight assigned to each opinion; and articulate the reasons for the weight given to them;

> (B)      Reevaluate Plaintiff's subjective complaints, and if the complaints are rejected, clearly articulate the reasons for doing so;

> (C)      If appropriate, reevaluate the opinions of Dr. Bevlyn Sagon, Dr. Theodore Weber, Dr. Susan Young, Terri Evans, and Dr. Philip Yates; specify the weight assigned to each opinion; and articulate the reasons for the weight given to them; and

> (D)      Take such other action as may be necessary to resolve this matter properly.

2.      The Clerk is further directed to close the file.

3.     In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** in Jacksonville, Florida on March 30, 2020.

JAMES R. KLINDT
United States Magistrate Judge

bhc
Copies to:
Counsel of Record